UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Briarcliff Manor Union Free School District,

*Plaintiff*,

v.

Nathan Heltzel,

*Defendant*.

No. 25-CV-3031 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Briarcliff Manor Union Free School District ("Plaintiff") brought this action against Nathan Heltzel ("Defendant"), a tenured school guidance counselor, in state court seeking $70,055.19 paid in wages, health insurance coverage contributions, and dental benefit insurance coverage contributions for Defendant from September 30, 2021 through November 12, 2021, and June 16, 2022, through November 30, 2022, when Defendant allegedly placed himself on voluntary military leave. (Not. of Removal, Ex. A ("Compl") ¶¶ 1, 9 (Dkt. No. 1-1).) Plaintiff asserted claims for fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment under New York law. (*Id.* ¶¶ 15–24.) The Action was then removed to federal court by Defendant. (*See* Not. of Removal (Dkt. No. 1).) Before the Court is Defendant's Motion for a Preliminary Injunction (the "Motion"). (Mot. for Preliminary Injunction ("Mot.") (Dkt. No. 31).) For the reasons explained herein, Defendant's Motion is denied.

## I. Background

The facts laid out here are drawn from the entirety of the factual materials before the Court, given that "[i]n considering a motion for a preliminary injunction, the Court may rely on affidavits, depositions, sworn testimony, and hearsay evidence." *UBS Sec. LLC v. Leitner*, No.

17-CV-1365, 2017 WL 5054739, at *1 n.1 (S.D.N.Y. May 12, 2017) (citing *Mullins v. City of N.Y.*, 626 F.3d 47, 52 (2d Cir. 2010)); *see also City of N.Y. v. Lopez*, No. 21-CV-7862, 2025 WL 1638033, at *1 (S.D.N.Y. June 10, 2025) ("The Court may thus consider all factual material in the record to determine whether, in its discretion, to issue or vacate preliminary injunctive relief."). The Court "need not," however, "accept as true" for the purposes of deciding a motion seeking emergency relief "factual allegations that are unsupported by reliable, admissible evidence." *A.H. by & through Hester v. French*, 511 F. Supp. 3d 482, 493 n.2 (D. Vt. 2021) (citing *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)).

On or around March 12, 2020, Plaintiff brought disciplinary charges against Defendant pursuant to New York Education Law § 3020-a. (Compl. ¶ 9.) As explained in the opinion of the Hearing Officer of the State of New York Education Department Tenured Teachers Disciplinary Hearing Unit, the charges were based upon events stemming from an extramarital romantic relationship between Defendant and a school-board-member parent of a student. (Aff. of Lauran Neier, Ex. 3, at 4–14 (Dkt. No. 33-3).) On March 5, 2020, the parent called the police to report Defendant's behavior at her home—she reported that Defendant entered her home unannounced, went to the bathroom where she was showering, and demanded to (and ultimately did) look at her cell phone, apparently jealous of communications she was having with a male acquaintance. (*Id.* at 4–6.) After a physical struggle over the cell phone, she obtained her phone and asked Defendant to leave, which he did. (*Id.* at 4–5.) After the parent made the police report, Defendant was arrested at the school. (*Id.* at 5.) Apparently without the parent's request, an Order of Protection was imposed against Defendant. (*Id.*) Defendant denied that he engaged in misconduct, and stated that he came to the home at the parent's request. (*Id.* at 6.) The school

also sought to discipline Defendant for making visits to the parent during work hours, (*id.* at 7–8), and because he purportedly asked the parent's child, himself a student, about the parent's relationship with the male acquaintance. (*Id.* at 12.) Defendant maintained that the parent directed him to speak with the student about the relationship, though he acknowledged in retrospect that the conversation was "inappropriate." (*Id.* at 13.) Based on these events, Plaintiff sought Defendant's termination from Plaintiff's employment. (Compl. ¶ 9.) It suspended Defendant *with pay and benefits* while the § 3020-a proceedings and appeals therefrom were ongoing, a process that took multiple years. (*Id.*) On March 22, 2022, the hearing officer determined that "termination of [Defendant's] employment is not the appropriate penalty," and instead issued a warning and a $6,000 fine against Defendant. (Aff. of Lauran Neier, Ex. 3, at 25–26.) Plaintiff appealed this decision through the Article 78 process, (Compl. ¶ 11), its appeal was denied, (Decl. of Donald J. Feerick, Jr., Esq., Ex. J (Dkt. No. 11-10)), and Plaintiff eventually directed Defendant to return to work on December 1, 2022, (Decl. of Donald J. Feerick, Jr., Esq., Ex. A, at 2 (Dkt. No. 11-1)).

During Defendant's period of suspension and while the § 3020-a proceedings and appeals were ongoing, he took voluntary military leave. (Compl. ¶ 10.) Specifically, he took leave from March 9, 2020 to March 13, 2020; September 20, 2020 to September 26, 2020; March 22, 2021 through March 26, 2021; September 1, 2021 through September 29, 2021; September 30, 2021 through November 12, 2021; May 16, 2022 through June 15, 2022; and June 16, 2022 through November 30, 2022. (*Id.*) Plaintiff takes the position that the Uniformed Service Employment and Reemployment Rights Act ("USERRA") required Defendant to notify Plaintiff, as his

employer, that he would be taking leave for military service, but that he did not do so.[1] (*Id.* ¶¶ 10–11.)

Accordingly, Plaintiff maintained Defendant's suspension with pay while the § 3020-a proceedings continued. (*Id.* ¶ 11.) Around November 30, 2022, Plaintiff learned that Defendant was on continued voluntary military leave and therefore ceased providing his wages and benefits effective December 1, 2022. (*Id.*) Citing New York Military Law § 242, Plaintiff says that if Defendant had properly reported his voluntary leave status, his paid suspension status would have been terminated from September 30, 2021 through November 12, 2021; May 16, 2022 through June 15, 2022; and June 16, 2022 through November 30, 2022. (*Id.* ¶¶ 12–13.)

On May 30, 2023, Defendant notified Plaintiff that he had been ordered to active duty from August 2, 2023 through July 31, 2026. (*See* Aff. of Laura Neier, Ex. 1, at 1 (Dkt. No. 33-1).) In that same message, he told Plaintiff that "after completing my active duty assignment, I will return to my job at Briarcliff Manor UFSD." (*Id.*) Defendant explains that he sent this message as advance notice of service as required by USERRA. (Mot. 2.)

On February 18, 2025, Plaintiff filed suit against Defendant in the Supreme Court of the State of New York, County of Westchester. (Compl. 1.) The state court complaint sought $70,055.19 in monetary damages, as well as interest. (*Id.* at 7.) Plaintiff asserted claims for fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment under New

---

[1] As explained further below, the pertinent portion of USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if," among other requirements, "the person . . . has given advance written or verbal notice of such service to [the] person's employer." 38 U.S.C. § 4312(a).

York law. (*Id.* ¶¶ 15–24.) On April 11, 2025, Defendant removed this Action to this Court. (Not. of Removal.) In his Notice of Removal, Defendant relied on 28 U.S. §§ 1331, 1441(b). (Not. of Removal 1.) He argued that removal was proper because Plaintiff's claims "necessarily raise significant federal law issues under" USSERA. (*Id.* ¶ 6.) Specifically, Defendant argued that because the claim was premised on his purported violation of his reporting obligations under USERRA, a federal statute, a federal question was actually raised and disputed. (*Id.* ¶¶ 20–21.)

After the removed Action was assigned to this Court (*see* Dkt.), Defendant filed a pre-motion letter seeking leave to file a Motion to Dismiss. (*See* Letter from Donald J. Feerick, Jr., Esq. to Court (May 2, 2025) (Dkt. No. 3).) At a telephonic conference on July 17, 2025, the Court set a briefing schedule on Defendant's Motion to Dismiss; briefing was complete on November 17, 2025, and the Motion to Dismiss remains pending. (*See* Dkt. (minute entry for proceedings held on July 17, 2025); Reply Mem. of L. (Dkt. No. 18).)

On June 9, 2026, one of Plaintiff's employees, Laura Neier, emailed Defendant. (*See* Mot., Ex. A, at 5 (Dkt. No. 31-3).)[2] Neier, the Director of Human Resources, explained that she was "reaching out as [Defendant's] military leave [was] ending soon," and said that she "would like to help prepare for [Defendant's] return to work in the District." (*Id.*) She notified Defendant that "guidance counselors may be scheduled to work an additional two weeks during the summer each year," an amount of time that would be prorated to "require five summer workdays rather than the full ten days" to accord with Defendant's anticipated return after July

[2] While the Court generally cites the filings by reference to the page numbers designated on the documents themselves, for documents that are unpaginated or inconsistently paginated, such as this Exhibit, the Court cites the page numbers as designated by the Court's Electronic Case Filing System, which appear on the top-right corner of each page.

31, 2026, approximately halfway through the summer break period for the school district. (*Id.*) She copied "Dr. Serio-Vaughan" to allow the two to "connect regarding the scheduling of [the] five summer days, as well as [Defendant's] assignment for the 2026–2027 school year." (*Id.*) The email also informed Plaintiff that as he had "been away" "for an extended period of time," he would be "expected to review the District's Employee Handbook and Code of Conduct prior to [his] return." (*Id.*) The email requested a response to confirm receipt and asked that Plaintiff contact Dr. Serio-Vaughan by "no later than June 24, 2026, so that appropriate plans c[ould] be made for [his] return, summer work schedule, and assignment for the upcoming school year." (*Id.*) The email expressed appreciation for Defendant's service and stated that the school "looked forward to welcoming [him] back to Briarcliff." (*Id.*)

In response to this email, on July 7, 2026, Defendant's counsel sent a cease-and-desist letter to Plaintiff's counsel. (*Id.* at 2–4.) The letter took the position that the communication was likely a fishing expedition related to the ongoing litigation, (*id.* at 3–4), as well as a substantive violation of USERRA, (*id.* at 4). It appears that this position was grounded, at least in part, on the fact that Dr. Sergio-Vaughn also serves as an Education Law Section 3020-a investigator for the District. (Aff. of Dr. Nathan Heltzel ¶ 11 (Dkt. No. 31-2).)

On July 8, 2026, Neier sent another email to Defendant. (Mot., Ex. B, at 2 (Dkt. No. 31-4).) The new message explained that Plaintiff "was preparing for [Defendant's] return to the District," and that it was "important that [Defendant] connect with Dr. Serio-Vaughan" regarding the five summer workdays and assignment for the coming school year. (*Id.*) The email also reiterated the request that Defendant review the handbook and code of conduct, and asked Defendant to respond. (*Id.*) The email explained that if Defendant did not respond by Friday,

July 17, 2026, Neier would "need to make additional efforts to contact [him] to ensure [Plaintiff would be] able to appropriately prepare for [his] return." (*Id.*) Defendant's counsel forwarded this message to Plaintiff's counsel, stating that "[a]ssuming [counsel] received and counseled [his] client about [the earlier] cease-and-desist letter," Plaintiff's counsel must "have no interest in resolving th[e] issue consensually[.]" (*Id.*) Counsel's communications went unanswered; Plaintiff's counsel says that he never received them, while Defendant's counsel lays the blame on Plaintiff's counsel's spam filter. (Mot. 4 n.1; Mem. in Opp'n ("Pl.'s Opp'n") 4 (Dkt. No. 34).) Plaintiff's counsel rejoins that the messages are not in his inbox's spam folder, and emphasizes that Defendant's counsel appears not to use delivery or read receipts. (Aff. of Mark C. Rushfield, Esq. ¶¶ 2, 4 (Dkt. No. 32).)

On July 9, 2026, Defendant filed a motion seeking leave to request a preliminary injunction. (*See* Letter Mot. for Leave to File a Prelim. Inj. (Dkt. No. 24).) In essence, Defendant argued that Plaintiff had violated USERRA by contacting him regarding returning to work before his military leave ended, performing certain tasks before his leave was over, and working the five prorated number of summer days in the 90-day period after his military service ended. (*Id.*)[3] The Court ordered Plaintiff to respond by no later than July 15, 2026. (Dkt. No. 25 (order dated July 10, 2026).) On July 15, 2026, the Court received Plaintiff's opposition via email, and it was subsequently filed on the docket. (Letter from Mark C. Rushfield, Esq. to Court (July 15, 2026) (Dkt. No. 26).)

---

[3] This position, which the Court already rejected in an Order, (Dkt. No. 28 at 3–4 (order dated July 16, 2026)), is also at least somewhat in tension with Defendant's email providing notice of the leave, in which he tells Neier to "contact [him] directly" if there are "any questions or concerns" regarding his leave," (Letter from Marc C. Rushfield, Esq. to Court (July 15, 2026), Ex. 1, at 1 (Dkt. No. 26-1)).

On July 16, 2026, the Court granted the motion for leave to file a Motion for a Preliminary Injunction and set a briefing schedule. (Dkt. No. 28 at 1 (order dated July 16, 2026).) At the Parties' request, the briefing schedule was extended. (Dkt. No. 29 (order dated July 21, 2026).) On July 27, 2026, Defendant filed a Memorandum of Law in support of the Motion. (Mot.) On July 29, 2026, Plaintiff filed an opposition Memorandum of Law and supporting materials. (Pl.'s Opp'n.) On July 31, 2026, Defendant filed a reply Memorandum. (Def.'s Reply (Dkt. No. 36).)

## II. Discussion

### A. Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (emphasis and quotation marks omitted)). "Preliminary injunctive relief is designed to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Williams v. Rosenblatt Sec., Inc.*, 136 F. Supp. 3d 593, 616 n.11 (S.D.N.Y. 2015) (quotation marks omitted). "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) (citation omitted).

To be entitled to preliminary relief under USERRA as amended by the Dole Act, a serviceperson must demonstrate:

(1) "a violation," either actual or "threatened or . . . imminent," of USERRA;
(2) "harm to the person [that] outweighs the injury to the employer";
(3) a "likelihood of success on the merits"; and
(4) that the award of injunctive relief "is in the public interest."

38 U.S.C. § 4323(e)(2). In effect, this standard mirrors the traditional test that applies to the grant of a preliminary injunction. *Cf. Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280, 290–91 (2d Cir. 2026) (explaining that courts consider the presence of irreparable harm, likelihood of success or serious questions going to the merits and a balance of hardship decidedly favoring the moving party, and the public interest). However, unlike a traditional preliminary injunction where the underlying injury must be one incapable of being "remedied by an award of monetary damages," *id.* at 291 (quotation marks omitted), under USERRA a "court may not deny a motion for injunctive relief on the basis that a party bringing an action to enforce a provision of this chapter may be awarded wages unearned due to an unlawful termination or denial of employment at the conclusion of such action," 38 U.S.C. § 4323(e)(3). In other words, the monetary nature of any alleged harm is of no moment.

B. Analysis

1. Likelihood of Success on the Merits and/or USERRA Violation

First, the Court considers the likelihood of success on the merits, which is closely related to the question whether Plaintiff has demonstrated a violation of USERRA. For the reasons that follow, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits of showing that an USERRA violation occurred here.

*a. Reemployment Under USERRA*

USERRA is designed "to encourage [noncareer] service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result

from such service." 38 U.S.C. § 4301(a)(1). To further this purpose, USERRA requires "the prompt reemployment" of eligible servicemembers by their old employers upon the conclusion of their service. *Id.* § 4301(a)(2). A servicemember is eligible for reemployment if:

> (1) the person . . . has given advance written or verbal notice of such service to such person's employer;
> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and
> (3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

*Id.* § 4312(a)(1)–(3).

If the servicemember complies with these requirements, then he or she must also follow certain steps to exercise his or her "entitlement to reemployment" under USERRA. *Woodard v. New York Health & Hosps. Corp.*, 554 F. Supp. 2d 329, 355 (E.D.N.Y. 2008). As relevant here, "any person who served in the U.S. military for a period longer than 180 days must submit 'an application for reemployment with the employer no later than 90 days after the completion of the period of service.'" *Jimenez v. Holbrook Plastic Pipe Supply, Inc.*, 761 F. Supp. 3d 500, 508 (E.D.N.Y. 2024) (alteration adopted) (quoting 38 U.S.C. § 4312(e)(1)(D)). In keeping with USERRA's broad remedial purpose, the Second Circuit has held that "where a returning servicemember's application for reinstatement puts the employer on ample notice of his claim to reemployment, any technical failures in the form of the application will not prevent a rehiring mandate from binding the employer." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 175 (2d Cir. 2011) (quotation marks omitted and alterations adopted). Accordingly, federal regulations provide "[a]n application for reemployment need not follow any particular format," may be made "orally or in writing," and need only "indicate that the employee is . . . returning from service . . .

and . . . seeks reemployment with the pre-service employer." 20 C.F.R. § 1002.118. Communications such as a simple "letter . . . requesting, among other things, reinstatement," *Serricchio*, 658 F.3d at 177, a phone call and email that led an employer to "underst[an]d that [the p]laintiff wanted her job back," *Jimenez*, 761 F. Supp. 3d at 509, or an email indicating that an individual returned from service and requesting to return to work, *Akpa v. MPB Grp. Inc.*, No. 25-CV-166, 2026 WL 658884, at *5 (D. Md. Mar. 9, 2026), have each been deemed sufficient "applications" for reemployment under the statute. In contrast, ambiguous communications, such as those "asking about the procedures for reemployment," do not constitute applications for reemployment. *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675, 677–78 (7th Cir. 1998); *see also Baron v. U.S. Steel Corp.*, 649 F. Supp. 537, 541 (N.D. Ind. 1986) (distinguishing between "mere inquiry" and reapplication). As another district court has explained, what matters is the "intent and *reasonable expectations of both the former employee and employer*, in light of all the circumstances," as to whether the employee serviceperson indicated an intent to return to work. *Grooms v. Dolgencorp, LLC*, No. 17-CV-191, 2019 WL 2342688, at *5 (N.D. Miss. June 3, 2019).

*b. Defendant's Application*

As already described, the record before the Court establishes that at the same time Defendant gave notice that he would take military leave, he *also* informed Plaintiff, in no uncertain terms, that he would return to the District at the end of his period of service. (Aff. of Laura Neier, Ex. 1, at 2.) This type of unambiguous message, expressly stating Defendant's intent to resume his work at the District upon his return, constitutes an "application" for employment under USERRA because it would reasonably lead both Plaintiff and Defendant to

expect that Defendant would return to work. *See Serricchio*, 658 F.3d at 175 (holding that a letter requesting reemployment sufficed); *Grooms*, 2019 WL 2342688, at *5 (explaining the operative distinction is the reasonable expectations of the parties); *Jimenez*, 761 F. Supp. 3d at 509 (explaining a call and email about returning to work provided sufficient notice). (*See* Aff. of Laura Neier ¶ 4 (Dkt. No. 33) ("As of now, the only information we have from the Defendant as to his decision . . . is his written commitment on May 30, 2023 that '[a]fter completing my active duty assignment [on July 31, 2026], I will return to my job at Briarcliff Manor UFSD." (alteration in original)).)

Defendant takes the position that because he has been on leave for over 180 days, "his reemployment obligations do not begin until he completes service," which apparently occurred on July 31, 2026, and "he then has up to ninety days to apply for reemployment," *i.e.* until around or on October 29, 2026. (Mot. 3.) This position misunderstands the nature of the protections afforded by USERRA: the statute does not extend Defendant's military leave or prolong his employment obligations by 90 days. *See Helms v. Vill. of Clarendon Hills*, No. 18-CV-8434, 2019 WL 2409596, at *5 (N.D. Ill. June 7, 2019) ("Instead of preventing an employer from requiring an employee to return to work within ninety days of returning from deployment, USERRA provides that a service member deployed for more than 180 days must apply for reemployment within ninety days of completing the deployment, with the employer required to promptly reemploy the service member upon such an application. The complaint suggests the opposite of a § 4312 violation, and so the Court cannot find the [defendant's] prompt reemployment of [the plaintiff] after his return from deployment actionable." (citation omitted)). Instead, it entitles him to a right to reemployment and a 90-day time limit in which to seek

reemployment. *Won v. Amazon.com Servs. LLC*, No. 20-CV-2811, 2025 WL 1796034, at *10 (E.D.N.Y. June 30, 2025) ("[Although] USERRA provides employees participating in uniformed service with 'reemployment rights and benefits,' *see* 38 U.S.C. § 4312(a), the right to reemployment under USERRA has limits."), *aff'd*, No. 25-1873, 2026 WL 1862004 (2d Cir. June 29, 2026). While a servicemember who has been on leave for over 180 days may decide, in the 90 day period, whether he or wants to exercise that right, the statute says nothing about an extension of leave status for those 90 days. *See* 38 U.S.C. § 4312.

Even assuming that a serviceperson cannot be asked to work within the 90-day period where he or she has not yet made a decision about whether to apply for reemployment, *but see Helms*, 2019 WL 2409596, at *5 (holding proactive outreach by employer was not actionable under USERRA), Defendant already made his choice. (*See* Aff. of Laura Neier, Ex. 1, at 2.) Defendant's 2023 email to the District placed Plaintiff on notice that Defendant intended to return to work for Plaintiff, and Plaintiff took actions in accordance with Defendant's own communique. Thus, the Court concludes that Plaintiff's communications, to the extent that they requested Defendant take certain actions after his military leave ended, but before the beginning of the academic calendar, are not likely to be actionable under USERRA. The same is true as to Defendant's claim that these requests constitute extra "requirements" for reemployment in violation of USERRA, (Reply Mem. 5–7)—even if they might constitute such requirements when imposed on a serviceperson who had not already elected to exercise their reemployment application rights.

Relatedly, Defendant argues that "[u]nder the . . . collective bargaining agreement between the District and the Briarcliff Teachers Association, summer work assignments for ten-

month personnel must be noticed no later than May 1 preceding the next school year [sic].” (Mot. 3.) He argues that because Plaintiff did not require any similarly situated individual who was not on military leave to accept a summer work assignment after “that date”—presumably May 1, 2026—constitutes disparate treatment based on his military service. (*Id.* at 3–4.) This theory, however, is unlikely to succeed on the merits for a different reason: once an individual has elected to return to work, the requirement to work five days over the summer, as opposed to beginning work at the start of the academic calendar, is unlikely to constitute an “adverse employment action” or “material change” in working conditions that would give rise to a discrimination claim under USERRA. This is because, including in the context of USERRA, courts “have consistently held that a change in schedule, without more,” does not provide the basis for a discrimination claim, *Hansen v. City of New York*, No. 24-CV-2808, 2025 WL 588119, at *5 (S.D.N.Y. Feb. 24, 2025) (quotation marks and citations omitted), and relatedly, courts have rejected USERRA claims where there is no basis to conclude that a serviceperson “suffer[ed] any decrease in benefits, wages, or salary; reduction in job responsibilities; loss of prestige, rank, or opportunity for career advancement; or any other material change to the terms and conditions of his employment.” *Bjelobrk v. Suffolk Cnty.*, No. 23-CV-8811, 2026 WL 1257027, at *9 (E.D.N.Y. May 7, 2026).[4] The conclusion is further strengthened by Plaintiff’s

[4] Including in some of the cases cited here, there exists confusion within the Second Circuit as to whether the standard Title VII *McDonnell Douglas* burden-shifting framework applies to the USERRA context (the minority view) or whether the burden-shifting framework imported from the Supreme Court’s opinion in *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983) governs (the majority view). *See Fink v. City of New York*, 129 F. Supp. 2d 511, 519 (E.D.N.Y. 2001) (describing the split and the bases for it). This Court adheres to its prior determination in *Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 529 (S.D.N.Y. 2017), that the NLRB framework “is the preferable approach for USERRA cases,” *id.* (quotation marks omitted), based on the Second Circuit decision in *Gummo v. Village of Depew*, 75 F.3d 98, 106

decision to reduce Defendant's required number of summer days from ten days to five days, to account for his period of leave through July 31, 2026. As the Court has determined that Defendant is unlikely to succeed on his argument that he had not already exercised his right to apply for reemployment, the Court cannot see how a request that Defendant work to schedule five working days *after* May 1, 2026 is a "change in the terms and conditions of his employment" sufficiently adverse to constitute discrimination under USERRA.[5] *See also* 38 U.S.C. § 4311(a) (describing, as actionable under USERRA, "deni[al of] initial employment, reemployment, retention in employment, promotion, or any benefit of employment"); *West v. City of Hartford*, 818 F. Supp. 3d 282, 299 (D. Conn. 2025) ("[T]here is a distinction between a low bar and no bar at all. Where the challenged action is not harmful to the plaintiff—not 'adverse'—there is no adverse employment action for the purposes of a discrimination claim."); *O'Connell v. Town of Bedford*, No. 21-CV-170, 2022 WL 4134466, at *12 (S.D.N.Y. Sept. 12, 2022) (holding that request for "documentation of [a plaintiff's] military duty . . . and . . . withholding approval of shift swaps" were not cognizable adverse actions under USERRA).

Finally, to the extent Defendant argues that the request that he review the handbook and sign a form prior to returning to work in the District violated his rights under USERRA, the Court determines this argument is unlikely to succeed.[6] There is no basis to conclude that

---

(2d Cir. 1996) (explaining that the Court would apply the *NLRB* test to an USERRA claim), but, in any event, both standards require some type of adverse action that forms the basis of the discrimination claim as a sort of analytical step zero.

[5] Indeed, it is unclear whether this notice even violates the CBA, which provides that "[t]eachers will be informed as soon as possible of summer employment assignments and by May 1 except in emergency conditions which require a change in the summer work planned." (Aff. of Laura Neier, Ex. 2, at 15 (Dkt. No. 33-2).)

[6] Indeed, this point may now be moot. To the extent that Defendant argues that this requirement should not have been imposed while he was on military leave, that leave has now

Defendant was required to complete these tasks *because of* his military service. *See, e.g.*, *Becker v. Buffalo Bd. of Educ.*, No. 17-CV-935, 2025 WL 2391690, at *9 (W.D.N.Y. Mar. 26, 2025) ("To establish a prima facie case under USERRA, [the] plaintiff must plead facts from which it could plausibly be inferred that his military service was a substantial or motivating factor in the adverse employment action taken against him."), *report and recommendation adopted*, 2025 WL 1948976 (W.D.N.Y. July 16, 2025), *appeal withdrawn*, No. 25-1883, 2026 WL 490241 (2d Cir. Feb. 19, 2026). And they are exactly the types of tasks ordinarily required upon an employee's return from leave in a workplace where policies may have changed over the course of intervening years. (*See* Pl.'s Opp'n 2–3 (explaining that there is no basis to conclude that individuals who completed "an extended leave status" for reasons other than military service would not also "be[] required to complete a pre-return to work requirement of review of District policies").) Nor, for the same reasons already described regarding the request to schedule five summer days, can this request truly be considered an "adverse action" cognizable under USERRA. Rather, the materials before the Court suggest that Defendant elected to return to work at the District and the District is asking him to fill out sundry employment materials allowing him to do so. Nor is there a scintilla of support in the record for the position that, as Defendant claims, (Mot. 4 ("[T]he District . . . demanded[] on threat of further 'efforts to contact' Dr. Heltzel . . . []that he review the District's Employee Handbook and Code of Conduct . . . [and fill a form] as a precondition to his return . . . ."); *id.* at 11 (substantially same)), any

---

ended. And as he has already exercised his right to apply for reemployment, the Court sees no reason why it would offend USERRA for Plaintiff to him to complete this task before his first day back on site.

adverse action would be or has been taken against him despite his not filing out the form and reviewing the materials prior to the conclusion of his military service.

Accordingly, the Court determines that Defendant has not demonstrated a likelihood of success on the merits.

2. Balance of Hardships & Public Interest

Next, the Court considers whether there is any "harm to [Defendant] [that] outweighs the injury to the employer," as required by statute. 38 U.S.C. § 4323(e)(2)(B). The Court concludes that Defendant has not identified any significant harm that may occur in the absence of injunctive relief.

In his Memorandum of Law, Defendant identifies exclusively the harm that he was purportedly being "forced to perform District work during his active duty," which, in his view, "would divert his attention from his military duties." (Mot. 11.) However, due to the unopposed extension of time from the briefing schedule originally set out by the Court, (*see* Letter from Mark C. Rushfield, Esq. to Court (July 20, 2026) (Dkt. No. 29)), that harm has now dissipated. Both Parties agree that Defendant's current period of service ended on July 31, 2026. Therefore, the grant or denial of such injunctive relief has no bearing on Defendant's military service.

To the extent that Defendant is arguing implicitly that he will be harmed if he complies with the requirement that he work five days before the beginning of the school year, the Court cannot comprehend how such a requirement works a harm appropriately remedied by injunctive relief. If Plaintiff complies and, it later turns out, the District should not have required him to work those five days *even though* he likely has exercised his right to apply for reemployment, he

may seek additional compensation for his lost time.[7] Further, Neier affirms that the District "has no objection to the Defendant remaining on military leave from the District after July 31, 2026 and throughout the 2026–2027 school year if he desires such leave even if the U.S. Coast Guard does not require him to serve," instead, the District requests "to know whether . . . Defendant will be returning from his military leave so as to recommence his employment as a K-12 school guidance counselor" for the academic year. (Aff. of Laura Neier ¶ 5.) Nor is there any indication that Plaintiff will take any action against Defendant if he fails to complete the summer work days—quite to the contrary, the record suggests that Plaintiff will accommodate further "leave . . . after July 31, 2026 and throughout the 2026–2027 school year if he desires such leave." (*Id.* ¶ 3.)

Again, now that time has elapsed due to the Parties' requested briefing schedule and Defendant's service is over, the Court readily concludes that the balance of hardships and the public interest tips in favor of Plaintiff. As Plaintiff has argued, it must assess needs and staffing for the coming school year. (Pl.'s Opp'n 10.) If Defendant does not intend to return until October or later, that would obviously interrupt Plaintiff's planning, which is a genuine harm, albeit a relatively modest one. *See W. Airlines, Inc. v. Int'l Bhd. of Teamsters*, 480 U.S. 1301,

[7] Nor would relying on the availability of monetary damages in these circumstances run afoul of USERRA's requirement that a "court may not deny a motion for injunctive relief on the basis that a party bringing an action to enforce a provision of this chapter may be awarded wages unearned due to an unlawful termination or denial of employment at the conclusion of such action," 38 U.S.C. § 4323(e)(3), because this request involves an inverse fact pattern: nobody on behalf of the District is alleged to have subjected Defendant to "unlawful termination or denial of employment" such that he should receive backpay. Instead, Defendant is being *proactively reemployed* at his own request; if it later turns out that he did five days of work in violation of some other component of USERRA, monetary damages can be awarded as compensation for work carried out as a result of his reemployment.

1308 (1987) (affirming denial of injunction where grant of relief would disrupt "[m]aintenance schedules, flight schedules, and staffing schedules"); *Seventh Regiment Armory Conservancy, Inc. v. Knight*, 811 F. Supp. 3d 467, 478 (S.D.N.Y. 2025) (concluding, in grant of preliminary relief, that relief was necessary to prevent the applicant from having to "relocate Artists-in-Residence, find and pay for . . . rehearsal space, . . . and reconfigure performance schedules"). But the Court cannot conclude that the burden is greater on Defendant for him to simply *communicate* now that his service is *over* whether he intends to adhere to his own voluntarily made and preexisting commitment to return to work in the District. It is difficult to understand that Defendant is somehow burdened by needing to respond, now that his service is over, to outreach from his former employer, particularly where that outreach is in conformity with his request, made in his initial email providing notice of leave, to contact him directly with any questions about his return to work. *Cf. Pamon v. United States Postal Serv.*, No. 24-CV-2061, 2025 WL 2632401, at *13 (N.D. Tex. Aug. 6, 2025) (describing "the general rule that de minimis contact between an employer and employee on FMLA leave does not amount to interference" (quotation marks omitted and alteration adopted)), *report and recommendation adopted*, 2025 WL 2426614 (N.D. Tex. Aug. 21, 2025); *Guy v. Alabama Power Co.*, No. 13-CV-8, 2015 WL 1650204, at *9 (M.D. Ala. Apr. 14, 2015) ("[USERRA] does not state, and [Plaintiff] cites no cases to suggest, that a company cannot ask about a person's returning to work before that period ends."); *Museau v. Heart Share Hum. Servs. of New York*, No. 12-CV-1851, 2014 WL 1277006, at *5 (E.D.N.Y. Mar. 27, 2014) ("[T]o the extent [an employee of Defendant] occasionally called or emailed Plaintiff to discuss [the employer]'s operations while [Plaintiff] was on [FMLA] leave, his contact does not rise to the level of interference with

Plaintiff's exercise of her rights under the FMLA."); *Coulson v. Town of Kearney*, No. 07-CV-5893, 2011 WL 810398, at *2 (D.N.J. Feb. 23, 2011) (explaining general rule that "a uniformed service employee is entitled to the same rights and benefits as other employees on furlough or leave of absence"). In other words, Plaintiff appears willing to accommodate further requests from Defendant *in spite of* his already having made a reemployment application under USERRA, imposing only the minimal requirement that he communicate what he wants. In these circumstances, and now that any obligations regarding Defendant's work plainly do not conflict with any military service by Defendant, the Court concludes that the balance of hardships favors Plaintiff. *Cf. Kleyman v. SUNY Downstate Med. Ctr.*, No. 18-CV-3137, 2020 WL 5645218, at *11 (E.D.N.Y. Sept. 21, 2020) (holding, in the context of an ADA claim based on failure to engage in a good-faith accommodation process, that "if an employer has made reasonable efforts to communicate with an employee, . . . an employer will not be liable for failing to make an accommodation" (quotation marks omitted)). And because an injunction would prevent planning for the academic calendar in Briarcliff Public Schools, while not facilitating any military service by Defendant, the public interest, too, favors Plaintiff.

Having found that each factor in the test for injunctive relief under USERRA favors Plaintiff, the Court denies Defendant's request for a preliminary injunction. Of course, Defendant remains free to file a letter requesting to assert an USERRA discrimination claim as a counterclaim in this Action. He simply has not demonstrated that he is entitled to injunctive relief at this point, even under the statute's more favorable analytical framework.

SO ORDERED.

DATED: August 7, 2026
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE